**ROLLINS v. SATTERFIELD et al.**

Court of Appeals of Kentucky.

Feb. 6, 1953.

Coleman, Harlin & Orendorf, Bowling Green, for appellant.

Milliken & Milliken, Bowling Green, for appellee.

MOREMEN, Justice.

On a rainy night, appellant, Gene Rollins, fell on a concrete pavement in front of the funeral home of Satterfield, Eakin and Dawson, and was severely injured. Mr. Rollins was a student at the Bowling Green Business University and for almost four years had lived within a block and a half of the school which was located two doors from the funeral home. He had passed over this particular spot many times, both when it was rainy and when it was dry, in daytime and nighttime, and he was familiar with the spot. Prior to the accident he suffered from hemophilia with the result that he was under continuous medical care and, at the time of the accident, one of his knees was stiff.

He filed a petition in which it was averred that appellees had negligently maintained the sidewalk and had permitted it to exist in a slick and dangerous condition. Issue was joined concerning the truth of that allegation. The action came on to be heard and, at the conclusion of the introduction of evidence in behalf of appellant, the trial court sustained appellees' motion for a directed verdict.

The court assigned no reasons, which appear of record, upon which he based his ruling, but we gather from the briefs that he assumed (a) primary liability for a dangerous sidewalk rests within a municipality and the property owner is charged with no duty unless that owner by some affirmative act created a dangerous condition thereon; (b) there is no liability by the owner if the sidewalk is constructed in a customary and usual manner; and (c) one who uses a sidewalk with full knowledge of the type of its construction and its condition when wet assumes the usual risks incident thereto.

Appellant described the locale of the accident as follows:

"Well, just as you get to their property there is a sidewalk that has been roughed up on top or just ordinary sidewalk, and then just as you get on their property there are two blocks of sidewalk that have been smoothed over extremely smooth on top, and then they have this driveway of the same composition as the first two blocks, but someone has gone in there and has taken a large wrecking bar or something and has made it rough in there just in the driveway, and then you go on down and there are, I think, some two blocks of ordinary concrete and the rest of the way down is mostly ordinary concrete."

In order to support the contention that the "two blocks" were improperly constructed, appellant introduced Mr. S. M. Stagg, a registered civil engineer who had had some experience in concrete sidewalk construction, and he testified that the modern method of finishing concrete sidewalks is usually to give them a sand finish or rough finish. He explained that this is accomplished with the use of a wood float. The wood float brings sand to the surface of the concrete and a rough finish results. Mr. Stagg was of opinion that the concrete in question had been given a trowel finish and that this process had made the surface hard and slick. He stated, however, that there were quite a a number of trowel finished sidewalks in Bowling Green, and testified:

"Q 31 Now, wouldn't you say that there are maybe 75% of the walks in Bowling Green that have a steel trowel finish? A. A whole lot of them have. I don't know what percentage it would be, but a whole lot of them have.

"Q 32 More have that kind than any other? A. I would think so because they have been down a long time.

"Q 33 And there are quite a few of those steel trowel finishes and smooth finishes all over Bowling Green? A. That's right.

"Q 34 Especially up around the uptown district? A. That's right because they have been down a long time."

All witnesses testified that the sidewalk was level. Appellee, Wade R. Eakin, who testified as if under cross-examination, explained the reason they had chipped the driveway was "on account of the ambulance

for there was a fairly deep ditch there and in order not to bounce the car and let the back end hit the curbing, we had to go so easy across there and when it was wet or had snowed on it, the wheels would spin."

■■■ Appellant argues that where an abutting property owner creates a dangerous condition on a sidewalk on his property, or abutting thereon, he is liable for injuries which result therefrom, and cites in support of this contention Equitable Life Assur. Soc. of the U. S. v. McClellan, 286 Ky. 17, 149 S.W.2d 730, which is authority for that rule of law. The opinion, however, points out that the condition must result from some positive act of the owner, or from an act of negligence on his part constituting a nuisance. In the case at bar, there was no showing that appellees had, by an affirmative act of negligence, created a dangerous condition of the sidewalk. The only evidence of any affirmative act was that introduced concerning the fact that appellees had chipped the portion of the sidewalk which was traversed by the driveway. But it was not shown that appellees had laid the concrete blocks to which we have referred, and appellant did not fall at the point where the driveway crossed the sidewalk.

There was also no evidence that anyone did anything or omitted to do anything that builders generally are charged with doing under like or similar circumstances. There was no showing that the sidewalk was not properly constructed, or that it was inherently dangerous. It is true Mr. Stagg testified that the sidewalk could have been made safer by the utilization of more modern means of construction, but the test is not what constitutes the ultimate in perfection, the law is satisfied with that which is ordinary. And it was shown by the proof that this leval sidewalk was of the type and construction ordinarily used in the city of Bowling Green.

■■■ Finally we believe that appellant should have been denied recovery because he used the sidewalk with full knowledge of the character of its construction and of its condition when it was wet. In Curtis v. Traders Nat. Bank, 314 Ky. 765, 237 S.W.2d 76, where a customer had fallen on the slippery marble floor of the vestibule of a bank, we held that there was no liability to such a customer who slips because of water, mud, et cetera on outside steps or in the entrance area when the floor is properly constructed and not inherently dangerous. We again affirmed that principle in Wheeler v. Southeastern Greyhound Lines, Ky., 238 S.W.2d 145. It is not necessary to rediscuss the theories and authorities set out in those opinions.

We are of opinion that the court properly directed a verdict for appellees and the judgment is therefore affirmed.